IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FIRST SOLAR, INC.,<br><br>Plaintiff,<br><br>v.<br><br>TRINA SOLAR CO., LTD., TRINA SOLAR (U.S.) INC., TRINA SOLAR ENERGY DEVELOPMENT COMPANY LTD., TRINA SOLAR SCIENCE & TECHNOLOGY (THAILAND) LTD., CHANGZHOU TRINA SOLAR ENERGY CO., LTD., TRINA SOLAR YIWU TECHNOLOGY CO., LTD., T1 ENERGY INC., and T1 G1 DALLAS MIDCO INC.,<br><br>Defendants. | C.A. No. 26-210 (JLH)<br><br>**JURY TRIAL DEMANDED** |

**AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff First Solar, Inc. ("First Solar"), by its undersigned counsel, brings this Amended Complaint for patent infringement against Defendants Trina Solar Co., Ltd.; Trina Solar (U.S.) Inc.; Trina Solar Energy Development Company Ltd.; Trina Solar Science & Technology (Thailand) Ltd.; Changzhou Trina Solar Energy Co., Ltd.; and Trina Solar Yiwu Technology Co., Ltd. (collectively, "Trina"); and T1 Energy Inc. and T1 G1 Dallas Midco Inc. (collectively, "T1") (Trina and T1 collectively, "Trina Solar") alleging, with knowledge as to its own acts and on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This action arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*, including specifically 35 U.S.C. § 271, based on Defendants' infringement of U.S. Patent No. 9,130,074 (the "'074 Patent").

2. First Solar is a leading solar technology company and a global provider of responsibly produced, eco-efficient solar modules. Born in the Midwest, headquartered in the Southwest, and with products that are shipped worldwide, First Solar is an American success story. Driven by a passion for innovation and powered by American ingenuity, First Solar has consistently invested in American manufacturing and American jobs. Today, it is the only U.S.-headquartered company among the world's ten largest producers of solar products.

3. Solar modules or panels, which are made of solar cells, are a sustainable alternative to traditional energy sources such as coal or gas. First Solar's solar modules, which use advanced thin film solar technology developed in its research facilities in California and Ohio, provide a competitive, high-performance, lower-carbon alternative to conventional crystalline silicon ("c-Si") solar modules. First Solar's modules have half the carbon footprint of conventional solar technology, use less water over the life of the module compared to c-Si modules and provide the fastest energy payback time in the industry. From raw material sourcing and manufacturing through end-of-life module recycling, First Solar's approach to technology embodies sustainability and ecological responsibility.

4. First Solar's unwavering dedication to innovative technology and sustainable energy is matched by its loyalty to the American value chain. As more and more companies are outsourcing their materials, labor and research to other countries, First Solar remains committed to investing in the American people and preserving domestic industry. In 2023 alone, First Solar's

operations supported, directly and indirectly, over 15,000 jobs and generated nearly $1.6 billion in labor income for the U.S. economy. With its commitment to cultivating domestic industry, First Solar is projected to support more than 30,000 jobs, representing almost $2.8 billion in labor income, by 2026. And between 2016 and 2026, First Solar will have invested approximately $4 billion in manufacturing and research and development infrastructure in the United States. First Solar is the only company among the world's ten largest solar manufacturers that does not manufacture in China.

5. As the solar industry evolves, new technologies are adopted. One of those emerging technologies is TOPCon, which stands for "tunnel oxide passivated contact". TOPCon solar cells can cost-effectively achieve a high operational efficiency and have other desirable performance metrics. TOPCon solar cells can also have superior bifaciality, meaning that they are able to generate more power from sunlight absorbed from the side of the module that faces away from the sun. This improved bifaciality can further increase the efficiency of the module.

6. First Solar owns a large portfolio of patents covering methods of manufacturing solar cells, including patents on TOPCon technology. The '074 Patent asserted in this action is one of First Solar's TOPCon patents.

7. Trina is a Chinese photovoltaics company founded in 1997 that has historically manufactured its products in China. Trina has a history of unfairly competing with American companies, such as First Solar, by unlawfully dumping solar modules on the U.S. market. Trina has been found to have attempted to avoid antidumping and countervailing duties by shipping its Chinese-made products through Thailand for minor processing before importing those products into the United States.

8. Trina makes TOPCon solar cells overseas using methods covered by the ’074 Patent. Trina Solar incorporates such infringing solar cells into their TOPCon solar modules, including the Vertex® N and Vertex® S+ product lines. Trina Solar imports these TOPCon solar cells and modules into the U.S., uses them in the U.S., and offers to sell and sells them in the U.S., thereby infringing the ’074 Patent.

9. Trina Solar is aware of the ’074 Patent and has no excuse for its infringement. In July 2024, First Solar publicly announced to the solar industry that it owns patents on TOPCon technology and that it intends to enforce those patents against companies that practice them without a license from First Solar. Trina Solar is undoubtedly aware of that announcement, which was widely reported in the solar industry trade press. Even if the announcement escaped its attention, Trina Solar was on notice of its infringing activity at least as of September 10, 2024, when First Solar notified Trina Solar in writing of its infringement of the ’074 Patent. Despite its knowledge of the ’074 Patent, Trina Solar has refused to take a license and has instead continued willfully to infringe the ’074 Patent.

10. This suit seeks to hold Trina Solar accountable for its unauthorized use of First Solar’s patented inventions, to provide redress for the damage Trina Solar has caused to First Solar, and to end Trina Solar’s infringement. Trina Solar must not be permitted to use technological advances owned by First Solar unfairly to compete with First Solar’s products.

## THE PARTIES

11. Plaintiff **First Solar** is a Delaware corporation with its principal place of business located at 350 West Washington Street, Suite 600, Tempe, Arizona, 85288. First Solar produces advanced thin film solar modules designed and developed in the United States. It has a prominent

manufacturing footprint in the United States, with three manufacturing locations in Ohio, a fourth factory in Alabama, and a fifth factory set to open in Louisiana in 2026.

12. First Solar is the only one of the world's ten largest solar manufacturers that is headquartered in the United States. Over the past two decades, First Solar has been committed to delivering high-quality, responsibly-produced American solar products to the global marketplace. First Solar manufactures advanced thin film solar modules that were designed and developed in the U.S. at a cost of over $1.5 billion in cumulative R&D investment.

13. First Solar produces energy-efficient solar modules with a superior degradation rate, temperature coefficient, spectral and shading response, and the smallest environmental footprint of any solar technology. Those modules have set industry benchmarks for quality, durability, reliability, design and sustainability. First Solar's solar products compete with other solar products, including Trina Solar's TOPCon products.

14. First Solar has been a continuous innovator in the field and has built a robust intellectual property portfolio, including hundreds of patents covering inventions in solar technology, including TOPCon. First Solar's TOPCon portfolio includes patents and patent applications in the United States, Australia, Canada, China, Europe, Hong Kong, Japan, Mexico, Malaysia, Singapore, South Korea, the United Arab Emirates and Vietnam.

15. Defendant **Trina Solar Co., Ltd.** ("Trina Co.") is a Chinese company whose principal place of business is located at No. 2 Tianhe Road, Trina Photovoltaic Industrial Park, Xinbei District, Changzhou, Jiangsu Province 213031, China.

16. Trina Co.'s global headquarters is located in Changzhou, Jiangsu Province, China, and its international headquarters is located in Shanghai, China. Trina Co. has regional headquarters in Singapore, Switzerland, the United Arab Emirates and the United States, and

operates sales and operation agencies in Brazil, Chile, China, Colombia, Germany, India, Italy, Japan, Mexico, Republic of Korea, South Africa, Spain, Turkey and the United Kingdom. Trina Co. has manufacturing bases in Brazil, China, Indonesia, Spain, Thailand, the United Arab Emirates, the United States and Vietnam.

17. Trina Co. does business, directly and/or indirectly, throughout the United States, including in this judicial district. Trina Co.'s business throughout the U.S. includes, either directly and/or through its subsidiaries, distributors, retailers, suppliers, customers and/or affiliates, importing into, and/or using, selling, and/or offering to sell in, the U.S. TOPCon solar cells that are manufactured overseas using methods claimed by the '074 Patent, and/or products that incorporate TOPCon solar cells that are manufactured using methods claimed by the '074 Patent. Trina Co. has manufactured, and continues to manufacture, infringing TOPCon solar cells for importation into and sale in the United States. Trina Co. ships infringing TOPCon solar products to subsidiaries, distributors, retailers, suppliers, customers, and/or affiliates in the United States.

18. Defendant **Trina Solar Energy Development Company Ltd.** ("Trina Vietnam") is a Vietnamese company whose principal place of business is located at Lot Cn-14, Yen Binh Industrial Zone, Hong Tien Ward, Pho Yen, Vietnam. Trina Vietnam is a subsidiary of, or otherwise owned by, Trina Co. Trina Vietnam operates under the direction of Trina Co.

19. Trina Vietnam does business, directly and/or indirectly, throughout the United States, including in this judicial district. Trina Vietnam's business throughout the U.S. includes, either directly and/or through its distributors, retailers, suppliers, customers, and/or affiliates, importing into, and/or using, selling, and/or offering to sell in, the U.S. TOPCon solar cells that are manufactured overseas using methods claimed by the '074 Patent, and/or products that incorporate TOPCon solar cells that are manufactured overseas using methods claimed by the '074

Patent. Trina Vietnam has manufactured, and continues to manufacture, infringing TOPCon solar cells and modules at its factory in Vietnam for importation into and sale in the United States. Trina Vietnam ships infringing TOPCon solar products to subsidiaries, distributors, retailers, suppliers, customers, and/or affiliates in the United States.

20. Defendant **Trina Solar Science & Technology (Thailand) Ltd.** ("Trina Thailand") is a Thai company whose principal place of business is located at No. 7/496, Moo 6, Amata City Industrial Real Estate, Mapyangphon Pluak Daeng, Rayong 21140, Thailand. Trina Thailand is a subsidiary of, or otherwise owned by, Trina Co. Trina Thailand operates under the direction of Trina Co.

21. Trina Thailand does business, directly and/or indirectly, throughout the United States, including in this judicial district. Trina Thailand's business throughout the U.S. includes, either directly and/or through its distributors, retailers, suppliers, customers, and/or affiliates, importing into, and/or using, selling, and/or offering to sell in, the U.S. TOPCon solar cells that are manufactured overseas using methods claimed by the '074 Patent, and/or products that incorporate TOPCon solar cells that are manufactured overseas using methods claimed by the '074 Patent. Trina Thailand has manufactured, and continues to manufacture, infringing TOPCon solar cells and modules at its factory in Thailand for importation into and sale in the United States. Trina Thailand ships infringing TOPCon solar products to subsidiaries, distributors, retailers, suppliers, customers, and/or affiliates in the United States.

22. Defendant **Changzhou Trina Solar Energy Co., Ltd.** ("Trina Changzhou") is a Chinese company whose principal place of business is located at 801 Longqi Road, Suxi Town, Yiwu, Zhejiang, China 322009. Trina Changzhou is a subsidiary of, or otherwise owned by, Trina Co. Trina Changzhou operates under the direction of Trina Co.

23. Trina Changzhou does business, directly and/or indirectly, throughout the United States, including in this judicial district. Trina Changzhou's business throughout the U.S. includes, either directly and/or through its distributors, retailers, suppliers, customers, and/or affiliates, importing into, and/or using, selling, and/or offering to sell in, the U.S. TOPCon solar cells that are manufactured overseas using methods claimed by the '074 Patent, and/or products that incorporate TOPCon solar cells that are manufactured overseas using methods claimed by the '074 Patent. Trina Changzhou has manufactured, and continues to manufacture, infringing TOPCon solar cells and modules at its factory in Changzhou, China for importation into and sale in the United States. Trina Changzhou ships infringing TOPCon solar products to subsidiaries, distributors, retailers, suppliers, customers, and/or affiliates in the United States.

24. Defendant **Trina Solar Yiwu Technology Co., Ltd. ("Trina Yiwu")** is a Chinese company whose principal place of business is located at 801 Longqi Road, Suxi Town, Yiwu, Zhejiang, China 322009. Trina Yiwu is a subsidiary of, or otherwise owned by, Trina Co. Trina Yiwu operates under the direction of Trina Co.

25. Trina Yiwu does business, directly and/or indirectly, throughout the United States, including in this judicial district. Trina Yiwu's business throughout the U.S. includes, either directly and/or through its distributors, retailers, suppliers, customers, and/or affiliates, importing into, and/or using, selling, and/or offering to sell in, the U.S. TOPCon solar cells that are manufactured overseas using methods claimed by the '074 Patent, and/or products that incorporate TOPCon solar cells that are manufactured overseas using methods claimed by the '074 Patent. Trina Yiwu has manufactured, and continues to manufacture, infringing TOPCon solar cells and modules at its factory in Changzhou, China for importation into and sale in the United States.

Trina Yiwu ships infringing TOPCon solar products to subsidiaries, distributors, retailers, suppliers, customers, and/or affiliates in the United States.

26. Defendant **Trina Solar (U.S.), Inc.** ("Trina U.S.") is a Delaware company whose principal place of business is located at 7100 Stevenson Blvd, Fremont, CA. Trina U.S. is a subsidiary of, or otherwise owned by, Trina Co. Trina U.S. operates under the direction of Trina Co.

27. Trina U.S. does business, directly and/or indirectly, throughout the United States, including in this judicial district. Trina U.S.'s business throughout the U.S. includes, either directly and/or through its distributors, retailers, suppliers, customers, and/or affiliates, importing into, and/or selling, offering to sell, and/or using in, the U.S. TOPCon solar cells that are manufactured overseas using methods claimed by the '074 Patent, and/or products that incorporate TOPCon solar cells that are manufactured overseas using methods claimed by the '074 Patent. Trina U.S. imports infringing TOPCon solar products into the United States and offers those products for sale within the United States.

28. As noted on Trina's website, it touts "100% US-based teams for sales, operations, logistics, finance, tech, and warranty departments" and "[d]edicated panel production just for the US to provide long-term forecasting and reliability". (https://static.trinasolar.com/sites/default/files/TrinaSolar_US-Advantage_Guidebook_V3-102023_web.pdf.) Trina says that it "maintains state-of-the-art manufacturing bases in Vietnam and Thailand for a dedicated US supply of Vertex S+ solar panels. These high-capacity facilities provide distributors, suppliers, and installers more long-term forecasting certainty and reliability". (https://static.trinasolar.com/sites/default/files/ TrinaSolar_US-Advantage _Guidebook_V3-102023_web.pdf.)

29. Defendant **T1 Energy Inc.** ("T1 Energy"), formerly known as Freyr Battery, Inc., is a company incorporated in Delaware whose principal place of business is located at 1211 E 4th St. Austin, Texas 78746. T1 Energy acquired Trina Solar's US-based solar manufacturing assets in late 2024, including a solar module manufacturing facility in Wilmer, Texas. T1 Energy reported that it is establishing an operations and intellectual property agreement between itself and Trina Solar. (https://www.solarpowerworldonline.com/2024/11/freyr-buys-trina-solar-panel-factory-in-texas-for-340-million/) T1 Energy's Wilmer facility continues to manufacture infringing Trina-branded solar panels that are jointly marketed in the United States by T1 Energy and Trina Solar. (*Id.*) T1 Energy maintains a website at https://t1energy.com/ that it uses to advertise its infringing TOPCon products for sale within the United States.

30. Defendant **T1 G1 Dallas Midco Inc.** ("T1 G1 Energy") is a company incorporated in Delaware whose principal place of business is located at Tradepoint 45 West, 1200 Sunrise Road, Wilmer, Texas 75172. T1 G1 Energy either directly and/or through its subsidiaries and affiliates has manufactured, and continues to manufacture, infringing TOPCon solar modules in the U.S. using infringing TOPCon solar cells that have been manufactured abroad and imported into the United States.

31. Trina's various subsidiaries and companies are interconnected and work in concert with one another. Additionally, Trina is the largest shareholder of T1 and works in concert therewith to manufacture and sell the infringing TOPCon solar products. For example, Trina and T1 work in concert for T1 to manufacture infringing TOPCon solar modules in the United States using infringing TOPCon solar cells provided by Trina. Trina and T1 then work in concert to sell those infringing TOPCon solar modules in the United States under the Trina Solar tradename.

## JURISDICTION AND VENUE

32. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because the claims herein arise under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.*, including 35 U.S.C. § 271.

33. This Court has personal jurisdiction over Trina Co. because it manufactures, and/or induces its subsidiaries, distributors, retailers, suppliers and/or affiliates to manufacture, TOPCon solar cells overseas using methods claimed by the '074 Patent and/or products that incorporate such TOPCon solar cells made overseas using the claimed methods. Trina Co. imports into, and/or uses, sells and/or offers to sell in, the U.S., and/or induces its subsidiaries, distributors, retailers, suppliers, customers and/or affiliates to import into, and/or use, sell and/or offer to sell in, the U.S., TOPCon solar cells that are manufactured overseas using methods claimed by the '074 Patent and/or products that incorporate such TOPCon solar cells made overseas using the claimed methods. Trina Co. availed itself of this forum by purposefully directing its activities here; Trina Co. intentionally placed, and continues to place, into the stream of commerce TOPCon solar cells that are manufactured overseas using methods claimed by the '074 Patent and/or products that incorporate such TOPCon solar cells made overseas using the claimed methods, with the knowledge, understanding and/or expectation that those TOPCon solar cells and products that incorporate such TOPCon solar cells, will be sold in Delaware. Trina Co. supplies TOPCon solar cells that are manufactured overseas using methods claimed by the '074 Patent and/or products that incorporate such TOPCon solar cells made overseas using the claimed methods, directly, and/or to and/or through its subsidiaries, affiliates, distributors and/or retailers, with the intention that such products will be sold to, and purchased and used by, customers in Delaware. Trina Co. derives substantial revenue from sales of TOPCon solar products, in Delaware, that incorporate

TOPCon solar cells that are manufactured overseas using methods claimed by the ’074 Patent. This action arises from these activities directed at the U.S., including Delaware, by Trina Co. Exertion of personal jurisdiction in this forum over Trina Co. does not offend traditional notions of fair play and substantial justice because of the aforementioned contacts Trina Co. has with this forum.

34. This Court has personal jurisdiction over Trina Vietnam because it manufactures, and/or induces its subsidiaries, distributors, retailers, suppliers and/or affiliates to manufacture, TOPCon solar cells overseas using methods claimed by the ’074 Patent and/or products that incorporate such TOPCon solar cells made overseas using the claimed methods. Trina Vietnam imports into, and/or sells and/or offers to sell in, the U.S., and/or induces its distributors, retailers, suppliers and/or affiliates to import into, and/or use, sell and/or offer to sell in, the U.S., such TOPCon solar cells made overseas using the methods claimed by the ’074 Patent and/or products that incorporate such TOPCon solar cells made overseas using the claimed methods. Trina Vietnam induces its affiliates, distributors, retailers, suppliers and/or customers to use, offer to sell and/or sell in the U.S. such TOPCon solar cells made overseas using the methods claimed by the ’074 Patent and/or products that incorporate such TOPCon solar cells made overseas using the claimed methods. Trina Vietnam availed itself of this forum by purposefully directing its activities here; Trina Vietnam intentionally imports, offers to sell, sells and/or places into the stream of commerce TOPCon solar cells that are manufactured overseas using methods claimed by the ’074 Patent and/or products that incorporate such TOPCon solar cells made overseas using the claimed methods, with the knowledge, understanding and/or expectation that those TOPCon solar cells and/or products that incorporate such TOPCon solar cells, will be sold in Delaware. Trina Vietnam imports, offers to sell and/or sells TOPCon solar cells that are manufactured overseas using

methods claimed by the ’074 Patent and/or products that incorporate such TOPCon solar cells made overseas using the claimed methods, directly and/or through affiliates, distributors and/or retailers, with the intention that such products will be sold to, and purchased and used by, customers in Delaware. Trina Vietnam derives substantial revenue from sales of TOPCon solar products, in Delaware, that incorporate TOPCon solar cells that are manufactured overseas using methods claimed by the ’074 Patent. This action arises from these activities directed at the U.S., including Delaware, by Trina Vietnam. Exertion of personal jurisdiction in this forum over Trina Vietnam does not offend traditional notions of fair play and substantial justice because of the aforementioned contacts Trina Vietnam has with this forum.

35. This Court has personal jurisdiction over Trina Changzhou because it manufactures, and/or induces its subsidiaries, distributors, retailers, suppliers and/or affiliates to manufacture, TOPCon solar cells overseas using methods claimed by the ’074 Patent and/or products that incorporate such TOPCon solar cells made overseas using the claimed methods. Trina Changzhou imports into, and/or sells and/or offers to sell in, the U.S., and/or induces its distributors, retailers, suppliers and/or affiliates to import into, and/or use, sell and/or offer to sell in, the U.S., such TOPCon solar cells made overseas using the methods claimed by the ’074 Patent and/or products that incorporate such TOPCon solar cells made overseas using the claimed methods. Trina Changzhou induces its affiliates, distributors, retailers, suppliers and/or customers to use, offer to sell and/or sell in the U.S. such TOPCon solar cells made overseas using the methods claimed by the ’074 Patent and/or products that incorporate such TOPCon solar cells made overseas using the claimed methods. Trina Changzhou availed itself of this forum by purposefully directing its activities here; Trina Changzhou intentionally imports, offers to sell, sells and/or places into the stream of commerce TOPCon solar cells that are manufactured overseas

using methods claimed by the '074 Patent and/or products that incorporate such TOPCon solar cells made overseas using the claimed methods, with the knowledge, understanding and/or expectation that those TOPCon solar cells and/or products that incorporate such TOPCon solar cells, will be sold in Delaware. Trina Changzhou imports, offers to sell and/or sells TOPCon solar cells that are manufactured overseas using methods claimed by the '074 Patent and/or products that incorporate such TOPCon solar cells made overseas using the claimed methods, directly and/or through affiliates, distributors and/or retailers, with the intention that such products will be sold to, and purchased and used by, customers in Delaware. Trina Changzhou derives substantial revenue from sales of TOPCon solar products, in Delaware, that incorporate TOPCon solar cells that are manufactured overseas using methods claimed by the '074 Patent. This action arises from these activities directed at the U.S., including Delaware, by Trina Changzhou. Exertion of personal jurisdiction in this forum over Trina Changzhou does not offend traditional notions of fair play and substantial justice because of the aforementioned contacts Trina Changzhou has with this forum.

36. This Court has personal jurisdiction over Trina Thailand because it manufactures, and/or induces its subsidiaries, distributors, retailers, suppliers and/or affiliates to manufacture, TOPCon solar cells overseas using methods claimed by the '074 Patent and/or products that incorporate such TOPCon solar cells made overseas using the claimed methods. Trina Thailand imports into, and/or sells and/or offers to sell in, the U.S., and/or induces its distributors, retailers, suppliers and/or affiliates to import into, and/or use, sell and/or offer to sell in, the U.S., such TOPCon solar cells made overseas using the methods claimed by the '074 Patent and/or products that incorporate such TOPCon solar cells made overseas using the claimed methods. Trina Thailand induces its affiliates, distributors, retailers, suppliers and/or customers to use, offer to sell

and/or sell in the U.S. such TOPCon solar cells made overseas using the methods claimed by the ’074 Patent and/or products that incorporate such TOPCon solar cells made overseas using the claimed methods. Trina Thailand availed itself of this forum by purposefully directing its activities here; Trina Thailand intentionally imports, offers to sell, sells and/or places into the stream of commerce TOPCon solar cells that are manufactured overseas using methods claimed by the ’074 Patent and/or products that incorporate such TOPCon solar cells made overseas using the claimed methods, with the knowledge, understanding and/or expectation that those TOPCon solar cells and/or products that incorporate such TOPCon solar cells, will be sold in Delaware. Trina Thailand imports, offers to sell and/or sells TOPCon solar cells that are manufactured overseas using methods claimed by the ’074 Patent and/or products that incorporate such TOPCon solar cells made overseas using the claimed methods, directly and/or through affiliates, distributors and/or retailers, with the intention that such products will be sold to, and purchased and used by, customers in Delaware. Trina Thailand derives substantial revenue from sales of TOPCon solar products, in Delaware, that incorporate TOPCon solar cells that are manufactured overseas using methods claimed by the ’074 Patent. This action arises from these activities directed at the U.S., including Delaware, by Trina Thailand. Exertion of personal jurisdiction in this forum over Trina Thailand does not offend traditional notions of fair play and substantial justice because of the aforementioned contacts Trina Thailand has with this forum.

37. This Court has personal jurisdiction over Trina Yiwu because it manufactures, and/or induces its subsidiaries, distributors, retailers, suppliers and/or affiliates to manufacture, TOPCon solar cells overseas using methods claimed by the ’074 Patent and/or products that incorporate such TOPCon solar cells made overseas using the claimed methods. Trina Yiwu imports into, and/or sells and/or offers to sell in, the U.S., and/or induces its distributors, retailers,

suppliers and/or affiliates to import into, and/or use, sell and/or offer to sell in, the U.S., such TOPCon solar cells made overseas using the methods claimed by the ’074 Patent and/or products that incorporate such TOPCon solar cells made overseas using the claimed methods. Trina Yiwu induces its affiliates, distributors, retailers, suppliers and/or customers to use, offer to sell and/or sell in the U.S. such TOPCon solar cells made overseas using the methods claimed by the ’074 Patent and/or products that incorporate such TOPCon solar cells made overseas using the claimed methods. Trina Yiwu availed itself of this forum by purposefully directing its activities here; Trina Yiwu intentionally imports, offers to sell, sells and/or places into the stream of commerce TOPCon solar cells that are manufactured overseas using methods claimed by the ’074 Patent and/or products that incorporate such TOPCon solar cells made overseas using the claimed methods, with the knowledge, understanding and/or expectation that those TOPCon solar cells and/or products that incorporate such TOPCon solar cells, will be sold in Delaware. Trina Yiwu imports, offers to sell and/or sells TOPCon solar cells that are manufactured overseas using methods claimed by the ’074 Patent and/or products that incorporate such TOPCon solar cells made overseas using the claimed methods, directly and/or through affiliates, distributors and/or retailers, with the intention that such products will be sold to, and purchased and used by, customers in Delaware. Trina Yiwu derives substantial revenue from sales of TOPCon solar products, in Delaware, that incorporate TOPCon solar cells that are manufactured overseas using methods claimed by the ’074 Patent. This action arises from these activities directed at the U.S., including Delaware, by Trina Yiwu. Exertion of personal jurisdiction in this forum over Trina Yiwu does not offend traditional notions of fair play and substantial justice because of the aforementioned contacts Trina Yiwu has with this forum.

38. In the event that this Court does not have personal jurisdiction over Defendants Trina Co., Trina Vietnam, Trina Thailand, Trina Yiwu, or Trina Changzhou by virtue of the above-pleaded facts, this Court nonetheless has personal jurisdiction over each of these entities under Federal Rule of Civil Procedure 4(k)(2). Under Rule 4(k)(2), personal jurisdiction over a defendant is established if the claim arises under federal law, the defendant is not subject to jurisdiction in any state's courts of general jurisdiction and exercising jurisdiction is consistent with the United States Constitution and laws. All three elements are met: (i) this case arises under federal law pursuant to 35 U.S.C. §§ 1 *et seq.*, including 35 U.S.C. § 271; (ii) if by virtue of the above, this Court does not have general jurisdiction over Trina Co., Trina Vietnam, Trina Thailand, Trina Yiwu, or Trina Changzhou, then such entities do not appear to be subject to jurisdiction in any state's courts of general jurisdiction; and (iii) Trina Co., Trina Vietnam, Trina Thailand, Trina Yiwu, and Trina Changzhou have sufficient contacts with the U.S. to justify the exercise of jurisdiction consistent with the United States Constitution and laws because these entities have purposefully availed themselves of the privilege of conducting business in the U.S. by manufacturing TOPCon solar cells overseas using methods claimed by the '074 Patent that are imported into, and/or used, offered for sale and/or sold in, the U.S., and/or incorporated into products that are imported into, and/or used, offered for sale and/or sold in the U.S., and/or inducing others to do the same. Trina Co. controls and otherwise directs and authorizes all activities of its U.S. and foreign subsidiaries to conduct infringing activities on their behalf, such as importing into, and/or selling, offering to sell and/or using in, the U.S. TOPCon solar cells that are manufactured overseas using the methods claimed by the '074 Patent and/or products that incorporate such TOPCon solar cells.

39. This Court has personal jurisdiction over Trina U.S., T1 Energy, and T1 G1 Energy because they are incorporated in Delaware and reside within, and have consented to, personal jurisdiction within this judicial district.

40. The subsidiaries and affiliated companies of Trina Solar, acting in concert and as principal and agents, have done, and continue to do, substantial, continuous and systematic business in this judicial district, including marketing, selling and distributing products that contain TOPCon solar cells that are manufactured overseas using methods claimed by the ’074 Patent, and have committed, and continue to commit, acts of patent infringement, and/or have done so through subsidiaries, distributors, retailers, suppliers, customers and/or affiliates, such as distributing, offering to sell, selling, importing and/or using TOPCon solar cells that are manufactured overseas using methods claimed by the ’074 Patent and/or TOPCon products that use such TOPCon solar cells, and/or inducing others to do the same.

41. Trina Solar has derived substantial revenue from sales in Delaware of products that include TOPCon solar cells that are manufactured overseas using methods claimed by the ’074 Patent.

42. Trina Solar has purposefully and voluntarily placed, and is continuing to place, products that contain TOPCon solar cells that are manufactured overseas using methods claimed by the ’074 Patent into the stream of commerce through established distribution channels with the expectation, knowledge and intent that such products, containing TOPCon solar cells that are manufactured overseas using methods claimed by the ’074 Patent, will be imported into, offered for sale, sold, purchased and/or used in, Delaware.

43. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b).

## BACKGROUND ON SOLAR TECHNOLOGY[1]

44. Solar technologies convert sunlight into electrical energy. Solar cells—also known as photovoltaic or PV cells—are devices that can absorb energy from sunlight to create electrical charges, generating electricity. That electricity can be introduced into the power grid for immediate use or stored in energy storage devices, such as batteries, for later use. To boost power output, several solar cells can be connected together to form solar modules, which are also sometimes referred to as solar panels.

45. Solar cells are typically small and delicately crafted out of semiconductor materials. One of those materials is silicon, which is incorporated into certain types of solar cells as the central base layer or "substrate". Silicon atoms have a central nucleus that is made up of protons (positively charged particles) and neutrons (neutrally charged particles). Electrons (negatively charged particles) orbit around this nucleus in "shells". At a high level, silicon atoms have four "valence" electrons (that is, electrons in the outermost electron shell of the atom), as shown by the four black circles in the outer ring in the schematic of a silicon atom reproduced below.

---

[1] This description and other descriptions of the relevant technology within this Complaint are for illustrative purposes only. Nothing contained within this Complaint is intended to either implicitly or explicitly express any position regarding the proper construction of any claim of the '074 Patent.




(http://hyperphysics.phy-astr.gsu.edu/hbase/Solids/sili.html.)

46. When placed together, silicon atoms will form a lattice-like structure with other silicon atoms, as shown in the diagram below. Silicon atoms bond by sharing valence electrons, shown in the diagram below as two dark circles between each pair of silicon atoms. This results in a stable structure where the valence band of each silicon atom has eight electrons. However, atoms at the surface or edge of the silicon lattice structure, such as the outer silicon atoms in the diagram, do not have four silicon atoms to bond to, and thus have electrons that are not bound to another silicon atom; the unbonded electrons are depicted in the diagram below as gray circles.




(https://www.eeweb.com/how-semiconductors-work/ (annotated).)

47. In silicon solar cells, there are typically two layers of silicon: a "p-doped layer" and an "n-doped layer". P-doped and n-doped refer to the process of "doping"—the addition of impurities (the "dopant") into the silicon lattice—with, respectively, an n-type or p-type dopant. The addition of a dopant modifies the electrical conductivity of the silicon layer.

48. A p-type dopant, commonly the element boron, has only three valence electrons. When a boron atom replaces a silicon atom in the lattice, it leaves a space for an electron because it only has three valence electrons that it may share with neighboring silicon atoms, as shown in the diagram below.




(http://hyperphysics.phy-astr.gsu.edu/hbase/Solids/dope.html.) The absence of an electron is commonly referred to as a "hole", which is depicted in the diagram below as a white circle.

49. Electrons are referred to as negative charge carriers, while holes are positive charge carriers, because the absence of an electron results in a net positive change in the electrical charge. The "p" in p-type refers to "positive", because the p-type dopant has holes in the valence shell, and these holes are positive charge carriers. A p-type dopant also has one fewer electron in its valence shell compared to silicon, which results in an overall more positive charge from doping. Electrostatic forces will attract other electrons to fill these holes.

50. An n-type dopant, commonly the element phosphorus, has five valence electrons. The "n" in n-type refers to "negative", because the n-type dopant has extra electrons that are negative charge carriers. When a phosphorus atom (or another n-type dopant) replaces a silicon atom in the lattice, it has an extra electron in the valence shell that is not bonded to an adjacent silicon atom, which results in an overall negative charge from doping. This fifth valence electron is easily energized or "excited", causing it to become a "free" electron. Such a free electron is shown in the diagram below as the green circle that is not located within any valence shell. Once

free electrons are generated, the valence shell will contain eight electrons, which is a stable configuration. The free electrons may move and become a part of the electric current.




(https://www.vedantu.com/question-answer/an-ntype-and-ptype-silicon-can-be-obtained-by-class-12-physics-cbse-5f9202bf146d684d25783a73.)

51. When p-doped and n-doped silicon layers are put into contact, free electrons are able to move from the n-doped layer to the p-doped layer, where they settle in the holes in the p-doped layer, as shown by the red line in the diagram below, forming what is known as a "p-n junction" at the interface between the two layers.




(https://novasolar.com/how-solar-works/.)

52. At the center of the p-n junction is a "depletion zone" in which the holes in the p-doped region have been filled with free electrons that have been expelled from the n-doped region, as shown in the left most circle in the diagram above. In traditional solar cells, this p-n junction is on the front surface of the silicon substrate, and a metal layer is applied to the back surface of the silicon substrate to serve as an electrical contact or "electrode". When a solar cell constructed like this is exposed to the sun, energy from sunlight excites electrons in the n-type and p-type regions, as well as in the depletion zone. When electrons become excited, they are knocked free from their atoms and flow through the solar cell as electrical current to the electrodes, and ultimately into the power grid or an energy storage device. This process is illustrated in the right most circle in the diagram above.

53. As shown in more detail in the diagram below, electricity is generated because the free electrons diffuse within the silicon substrate and are eventually pushed by the electrical field of the depletion zone toward the electrodes (similar to a magnet) and flow in that direction, as

shown in the leftmost and middle images in the diagram above (where the n-type silicon layer is on top of the p-type silicon layer). The electrons are pushed through the n-type silicon layer along with additional excited electrons to the first electrodes (the blue rectangle at the top of the diagram). The movement of the electrons from the n-type silicon layer causes a positive charge as the n-type silicon layer loses electrons. To complete the circuit and ensure that the device stays charge neutral, electrons enter from the other electrode (red rectangle at the bottom of the diagram) to flow through the circuit, as shown in the rightmost image, through the p-type silicon layer, the depletion zone and then the n-type silicon layer. While sunlight continues to hit the solar cell, electrons continuously flow along this path, forming an electrical current.




(https://www.eia.gov/energyexplained/solar/photovoltaics-and-electricity.php (annotated).)

54. One problem with this approach is that significant amounts of the free electrons that have been excited by sunlight will recombine into silicon atoms present in the substrate that have lost electrons. This typically occurs at the outer surfaces of the silicon substrate where there are unbonded electrons and holes. This "recombination" of electrons into silicon atoms weakens the available electric current by reducing the flow of free electrons to an electrode. Solar cells use various methods to reduce recombination so that more electrons can be directed to an electrode to form a stronger electrical current and increase the efficiency of the solar cell.

55. One of the ways solar cells are designed to reduce recombination is through "passivation", which is the reduction in the reactivity of a material. In solar cells, the surfaces of the silicon substrate can be passivated with a different material (often silicon dioxide or silicon nitride) to reduce the occurrence of recombination along the surface of the substrate. This surface passivation layer bonds to the unbonded silicon electrons on the surface of the silicon, eliminating holes that would otherwise attract the free electrons. This suppression of the recombination of electrons and holes at or near the physical surfaces of the silicon substrate increases the efficiency of the solar cell by increasing the electric current and voltage.

## THE PATENTED TECHNOLOGY

56. The '074 Patent is entitled "High-Efficiency Solar Cell Structures and Methods of Manufacture". Its inventors are Oliver Schultz-Wittmann and Denis DeCeuster. The application for the '074 Patent was filed on November 15, 2011 and claims priority to provisional patent application number 61/171,194, filed on April 21, 2009. The '074 Patent was issued on September 8, 2015. A true and correct copy of the '074 Patent is attached as Exhibit A.

57. The claimed methods of the '074 Patent improve the manufacturing efficiency and performance of solar cells, particularly TOPCon solar cells. As recited in claim 1, the inventive method of manufacturing solar cells generally involves providing a wafer as a central substrate, depositing or growing an interface passivation layer (sometimes referred to as the "tunneling layer") onto the substrate, and depositing a doped conductive and passivating layer on the interface passivation layer. This assembly of layers is heat-treated at a temperature of about 500 °C or higher, which facilitates diffusion of the dopant from the conductive and passivating layer through the interface passivation layer. Metal electrodes that directly contact the conductive and passivating layer are provided after the thermal treatment.

58. The claimed steps of depositing or growing an interface passivation layer on the substrate, depositing a doped conductive and passivating silicon layer on the passivation layer, and then heat-treating these layers, results in a structure, a non-limiting illustration of which is shown in the diagram below, that reduces electron recombination and increases conductivity.




('074 Patent, Fig. 8 (annotated).)

59. In this exemplary embodiment, the n-doped electrically conductive and passivating silicon layer allows electrons to move between the n-type substrate and the metal electrodes. The interface passivation layer between the conductive and passivating layer and the silicon substrate "coats" the back surface of the substrate to reduce recombination at that surface. The interface passivation layer is also referred to as a "tunneling layer" because it is thin enough that excited electrons can "tunnel" through the layer. This tunneling ability is necessary because the interface passivation layer is made of an electrically insulating material, such as silicon oxide; without the

tunneling effect, electrons could not flow between the back electrodes and the silicon substrate through the insulating silicon oxide of the tunneling layer.

60. The back surface passivation, a result of depositing or growing an interface passivation layer over the silicon substrate as claimed in the ’074 Patent, also results in improved bifaciality—meaning that the solar cells are able to generate more power from sunlight absorbed from the back side of the solar cell (the side facing away from the sun). This is possible because the interface passivation layer bonds to unbonded electrons at the back surface of the substrate, preventing recombination of electrons at the back surface.

61. As noted above, one of the steps of the methods claimed by the ’074 Patent is providing thermal treatment to the assembly comprising the central silicon substrate, the conductive and passivating layer and the interface passivation layer. This thermal treatment facilitates diffusion of the n-dopant material through the interface passivation layer and, in some embodiments, into the silicon substrate. That diffusion of dopant provides pathways to the electrodes along which the electrons travel, thereby effectively shortening the path the electrons must take through the interface passivation layer and conductive and passivating layer. These pathways are formed because the diffused dopant results in higher conductivity.

62. The general concept of shortened pathways through which the charge carriers (such as electrons) flow is illustrated by comparing Figures 4 and 5 of the ’074 Patent. When an electron is “excited” by exposure to an energy source, such as sunlight, it may break away from its current atom and move to an electrode. Such free electrons will generally take the path of least resistance to the nearest electrode. Figure 4, reproduced below with annotations, shows a solar cell wherein the silicon substrate (45) is less conductive than the p-doped emitter layer (42). Because the silicon substrate (45) is poorly conductive (and thus highly resistive) compared to the p-doped emitter

layer (42), the path of least resistance to the electrodes (41) is vertically through the silicon substrate (45) and laterally through the emitter layer (42), as illustrated by the solid lines in the diagram below. The electron takes this path even though the overall distance is generally longer compared to a direct path toward the electrodes (41).




FIG. 4

41: Front electrodes

42: Thin p-type emitter

45: n-type wafer

49: Back electrode

('074 Patent, Fig. 4 (annotated).)

63. Figure 5, reproduced below with annotations, shows a solar cell that does *not* have a highly conductive, heavily doped emitter layer between the silicon substrate (55) and the electrodes (51). In the structure of Figure 5, the charge flow path does not travel through a region where the conductivity varies as significantly as the p-doped emitter of the structure of Figure 4. Because of this, the path of least resistance in Figure 5 is the shortest path to the electrodes (51), and thus the electrons take a shortened, curved path between the substrate (55) and the electrodes (51), as represented by the dashed lines.




FIG. 5

51: Front electrodes

55: n-type wafer

58: Back p-type emitter

59: Back electrode

('074 Patent, Fig. 5 (annotated).)

64. As noted above, using the thermal treatment step claimed in the '074 Patent results in diffusion of the dopant through the interface passivation layer and, in some embodiments, into the silicon substrate. The areas where the dopant, *e.g.*, phosphorus, is incorporated into the interface passivation layer and, in some embodiments, the substrate, makes the silicon in those areas more conductive and forms low resistance pathways through those layers along which electrons can more easily travel. The diffusion of dopant into these layers thus increases the conductivity of the solar cell through the interface passivation layer, such that its conductivity is more similar to the conductivity of the conductive and passivating layer. As a result, charges take a more direct route to the electrodes affixed to the back of the solar cell than they otherwise would without the diffusion of the dopant, similar in concept to Figure 5.

65. The diffusion of the dopant through the interface passivation layer further forms a junction between the doped conductive and passivating layer and the silicon substrate. This "high-low junction" further reduces recombination by creating an electrical field around the back side surface of the silicon substrate, which acts to push electrons through the solar cell, thus decreasing

instances of recombination. The diffusion of phosphorus through the interface passivation layer has the added benefit of making tunneling therethrough more efficient.

66. In addition to reducing recombination by providing pathways through the solar cell via the diffusion of dopant, the claimed methods allow for electricity to flow between the electrodes and the substrate through the conductive and passivating layer rather than requiring direct contact between the electrodes and the substrate. Accordingly, the claimed method eliminates the cost and labor of forming a direct metal connection from the electrode to the back surface of the substrate, such as by etching down to the substrate or melting metal all the way through the conductive and passivating layer and interface passivation layer to the substrate.

## THE INFRINGING PRODUCTS

67. Trina Solar manufactures solar cells by using methods claimed by the ’074 Patent. Trina Solar incorporates those TOPCon solar cells into TOPCon solar modules that are sold to consumers. Trina Solar’s TOPCon solar modules (collectively, the “Trina Solar TOPCon products” or the “Infringing Products”) include, for example, the Vertex N and Vertex S+ lines. These products use and incorporate the same, or substantially similar, infringing TOPCon solar cells. Accordingly, the products analyzed below are representative of Trina Solar’s full offering of infringing TOPCon products.

68. Trina Solar **Vertex N** solar modules incorporate TOPCon solar cells. The screenshot below from Trina Solar’s website describes the Vertex N series products as based on “*n* type i-TOPCon technology”.




(https://static.trinasolar.com/sites/default/files/VertexN_brochure_EN.pdf)

69. Non-limiting examples of Trina Solar's Vertex N solar modules that utilize TOPCon solar cells are the Vertex 670W, Vertex N 210R, NE19R, NE19RC.20, NE19R.70, NEG21C.20, NEG19R.20, and NEG20C.20. Trina Solar provides data sheets and installation manuals for products in the Vertex N line.[2] Representative examples, shown below, of these data sheets tout Trina Solar's "210 innovative platform" and "patented i-TOPCon technology", which allegedly offer "continuous efficiency improvement".

---

[2] E.g., https://static.trinasolar.com/sites/default/files/DT-M-0093%20B%20Datasheet_Vertex_NE19R_EN_2024_B.pdf; https://static.trinasolar.com/sites/default/files/VertexN_210R_625W_brochure_EN.pdf), and Vertex S+ line (e.g., https://static.trinasolar.com/sites/default/files/VertexS-450W.pdf; https://static.trinasolar.com/sites/default/files/DT-M-0069%20F%20Datasheet_VertexS+_NEG9RC.27_EN_2024_B.pdf.

T


Vertex N
N-type i-TOPCon
BACKSHEET MONOCRYSTALLINE MODULE
TSM-NE19R 600-630W
630W / MAXIMUM POWER OUTPUT
23.3% / MAXIMUM EFFICIENCY

(https://static.trinasolar.com/sites/default/files/DT-M-0093%20B%20Datasheet_Vertex_NE19R_EN_2024_B.pdf.)




(https://static.trinasolar.com/sites/default/files/DT-M-0041%20E%20Datasheet_Vertex_NEG20C.20_EN_2024_B.pdf)




(https://static.trinasolar.com/sites/default/files/DT-M-0093%20B%20Datasheet_Vertex_NE19R_EN_2024_B.pdf (highlighting added).)

70. Trina Solar provides product specification information for its Vertex N line of TOPCon solar modules. A representative example of this information is the Trina Solar 210 Vertex N Product White Paper, available on Trina Solar's website. (https://static.trinasolar.com/sites/default/files/EN_Trina%20Solar%20210%20Vertex%20N%20Product%20Whitepaper_Final(1).pdf). The white paper states that the Trina Solar Vertex N products utilize Trina Solar's i-TOPCon solar cells.




Figure 2: Trina Solar Vertex modules exhibition

In early 2021, Trina Solar released the Vertex 670W module with an efficiency of up to 21.6%, accelerating the industry into the 600W+ high-power era. Further play the P type photovoltaic module value, to make a great contribution to the photovoltaic industry. By Q3 of 2022, global shipments of 210 modules exceed 70GW, and Trina Solar shipments about 40GW. No matter whether any technology is advanced or not, it is difficult to maximize its value without industry recognition and industrial ecological support. In the N-type era, Trina Solar's 210 modules based on i-TOPCon technology will magnify the advantages of 210 on the basis of 210 600W+ matured industrial chain, making the lead even more advanced.




Figure 3: Diagram of N-type solar cell structure

Trina Solar N-type i-TOPCon solar cell has an innovative structure. N-type i-Topcon solar cell uses N-type silicon wafer as substrate, the passivation contact technology on the back side effectively reduces the recombination of carriers at the metal contact region, effectively achieves the carrier transmission, and significantly improves the cell efficiency. Trina solar N type i-TOPCon solar cells have no boron-oxygen pair, and their LID (Light Induced Degradation) is significantly lower than P-type PERC solar cells. Combined with advanced hydrogen treatment technology, N-type solar cells also obtain low LeTID (Light and elevated temperature-induced degradation).

(https://static.trinasolar.com/sites/default/files/EN_Trina%20Solar%20210%20Vertex%20N%20Product%20Whitepaper_Final(1).pdf (highlighting added).)

71. Trina Solar's **Vertex S+** solar modules utilize TOPCon solar cells. The screenshot below from Trina Solar's website describes the Vertex S+ modules as being "based on n type i-TOPCon technology".




(https://www.trinasolar.com/en-glb/product.)

72. Non-limiting examples of Trina Solar's Vertex S+ solar modules that use TOPCon solar cells are the NEG9RC.27, NEG9R.28, NEG9R.25, NEG18R.20, NEG18R.25, and NEG18R.28. Trina Solar provides data sheets and installation manuals for products in the Vertex S+ line.[3] Representative samples, as shown below, of these datasheets tout the Vertex S+ products as "N-type i-TOPCon" modules.




(https://static.trinasolar.com/sites/default/files/DT-M-0088%20D%20Datasheet_Vertex%20S+_NEG18R.28_EN_2024_C.pdf.)

---

3 E.g., https://www-cdn.trinasolar.com/wwwstorage/sites/13/UM-M-0002-N_Trinasolar_Vertex_Series_User_Manual_Clean_EN.pdf; https://www-cdn.trinasolar.com/wwwstorage/sites/13/DT-M-0069-F-Datasheet_VertexS_NEG9RC.27_EN_2024_B.pdf.




(https://static.trinasolar.com/sites/default/files/DT-M-0069%20F%20Datasheet_VertexS+_NEG9RC.27_EN_2024_B.pdf.)




(https://static.trinasolar.com/sites/default/files/DT-M-0084%20C%20Datasheet_Vertex%20S+_NEG9R.25_EN_2024_C.pdf.)

73. Trina Solar's TOPCon products tout many benefits, including, for example, high efficiency, high bifaciality, excellent temperature coefficient (or good lower temperature efficiency), and low power degradation, as shown in the screenshots below taken from an example Vertex S+ datasheet and the Vertex N White Paper.



**High Customer Value**

- Clear black, designed with aesthetics in mind, suitable for residential and C&I rooftop
- Perfect size and low weight for handling and installation
- Compatible with mainstream inverters and diverse mounting systems
- Mechanical test loads up to 5400 Pa front side and 4000 Pa back side
- Certified lifetime carbon footprint assessment

**High reliability with light double glass**

- Less prone to micro-cracks and scratches on the back side
- Excellent fire rating, weather resistance, Sustainable in harsh environments and extreme weather conditions
- Certified resistance against salt spray, sand dust, ammonia, PID
- Up to 25 years product warranty and 30 years power warranty

**High power up to 450W**

- Up to 22.5% module efficiency, on 210 innovative platform
- Patented i-TOPCon technology with continuous efficiency improvement, including contact resistance reduction, rear reflection enhancement and edge quality repairment

**High energy yield**

- Excellent low irradiation performance, validated by 3rd party
- Lower temperature efficient (-0.29%/°C) and lower working temperature
- Higher bifaciality, with up to 10%~20% additional power gain from back side depending on albedo




(https://static.trinasolar.com/sites/default/files/DT-M-0069%20F%20Datasheet_VertexS+_NEG9RC.27_EN_2024_B.pdf.)



### 3.1.2 High Power Generation

**Bifaciality 80% (±5%)**

Higher bifaciality means that N-type modules have higher power generation under the condition that the irradiation intensity received by the back side is the same. In different surface reflection scenarios, N-type modules can obtain a power generation gain of 3%-5% according to the simulated power generation results of typical system design as a reference.

| Annual power gain kWh/kWp/yr | Grass land AlbedO=0.2 | Sand AlbedO=0.4 | Snow field AlbedO=0.7 |
|---|---|---|---|
| Vertex N 80 (±5%) | +3.34% 1423 | +4.40% 1517 | +5.42% 1652 |
| PERC 70 (±5%) | 1377 | 1453 | 1567 |

Figure 11: Comparison of power generation between Vertex N type bifacial dual glass module and P type bifacial dual glass module

Benefit by the excellent characteristics of the N-type solar cell, the bifaciality of the Vertex N module reaches 80%, which is about 10% higher than that of the P-type. According to different application scenarios, the annual power generation gain can be achieved by 3.34% on the grass, 4.40% on the sand and 5.42% on the snow.

**Excellent temperature coefficient -0.30%/C**

The solar cell temperature of 25 ° C is the standard temperature for rated power of the module. In fact, the solar cell temperature of the module is much higher than 25 ° C. Taking the actual solar cell 45° C temperature of the module as an example, the difference between the standard temperature of 25 ° C and the actual operating temperature of the module solar cell is 20 ° C. Since the temperature coefficient of N-type module is -0.30% / ° C, the temperature coefficient of P-type module is 0.34% / ° C. It is calculated that the power loss of N-type modules is about 0.8% lower than that of P-type modules at the operating temperature of 45° C.

| N type (Temperature coefficient -0.30%°C) | Temperature | P type (Temperature coefficient -0.34%°C) |
|---|---|---|
| 486 | 85°C | 436 |
| 501 | 75°C | 455 |
| 517 | 65°C | 474 |
| 533 | 55°C | 493 |
| 550 | 45°C | 512 |
| 567 | 35°C | 531 |
| 585 | 25°C | 550 |
| -99W | | -114W |

Figure 12: Comparison of power attenuation caused by temperature coefficient between Vertex N-type and P-type modules

**Power degradation is 1% in the first year and 0.4% yearly after that.**

N-type power degradation is 1% in the first year and 0.4% yearly after that. Compared with P-type power degradation of 2% in the first year and 0.45% yearly after that, the module power degradation after 30 years of use is 2.45% lower than P-type power degradation. Due to lower power degradation, this is one of the important reasons that module get more 3% power gain over the 30 years power warranty period.

| N type | P type |
|---|---|
| 30 year Power Warranty | 30 year Power Warranty |
| 12 year Product Warranty | 12 year Product Warranty |
| 1% Firstyear attenuation | 2% Firstyear attenuation |
| 0.4% Annual attenuation | 0.45% Annual attenuation |



Figure 13: Comparison of power warranty between Vertex N and P modules

### 3.1.3 High Reliability

**Light induced degradation (LID)**

Compared with P-type silicon wafers, N-type silicon wafers have longer minority carrier life, N-type silicon wafers are not susceptible to the introduction of impurity elements, and the phosphorus doping technology on N-type silicon wafers base is not susceptible to LID (Light Induced Degradation) caused by B-O complex due to the absence of boron oxidation.



Figure 14: LID test comparison between Vertex N modules and ordinary P-type modules

In LID test of Vertex N modules, B-O complex is not easily generated under the condition of 60kWh/m2 because there is no influence of boron oxidation. The average power attenuation of LID decreases to about 0.2%, while the average power attenuation of P-type PERC technology modules is about 1.2%. Thus, under the same conditions, the average power attenuation of N-type LID is about 1% better than that of P-type LID, which can significantly reduce the energy loss caused by module attenuation.

(https://static.trinasolar.com/sites/default/files/EN_Trina%20Solar%20210%20Vertex%20N%20 Product%20Whitepaper_Final(1).pdf.)

74. Trina Solar further touts that its i-TOPCon solar cells have achieved an efficiency of 25.5%, which Trina claims is "a new world record for large area industrial N-type monocrystalline silicon i-TOPCon cell efficiency".

Trina Solar technology development team made continuous efforts to the combination with advanced i-TOPCon solar cell technology on the basis of 210N silicon wafers, overcome the technical problems of selective boron emitter, large area tunneling silicon oxide and doped polycrystalline silicon preparation, high efficiency hydrogen passivation technology, and adopt mass-produced solar cell equipment. On the 210mm * 210mm size large area N-type monocrystalline silicon substrate with high minority carrier life, it has broken the efficiency record of N-type cells for many times. In 2022, Trina Solar State Key Laboratory of Photovoltaic Science and Technology (PVST) announced that its self-developed 210mm*210mm size high-efficiency i-TOPCon solar cell has been tested and certified by the third party of the Chinese Metrology Academy of Sciences. The highest cell efficiency reached 25.5%, which created a new world record for large area industrial N-type monocrystalline silicon i-TOPCon cell efficiency.




(https://static.trinasolar.com/sites/default/files/EN_Trina%20Solar%20210%20Vertex%20N%20 Product%20Whitepaper_Final(1).pdf.)

75. Trina Solar is able to capture the benefits of TOPCon technology by manufacturing solar cells using the methods claimed by the ’074 Patent.

**<u>INFRINGEMENT OF U.S. PATENT NO. 9,130,074</u>**

76. First Solar is the assignee of the ’074 Patent. First Solar has ownership of all substantial rights in the ’074 Patent, including the right to exclude others from practicing the inventions of the ’074 Patent and to recover damages for infringement of the ’074 Patent.

77. The ’074 Patent is valid and enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

78. Independent Claim 1 of the ’074 Patent recites:

> A method of fabricating a solar cell comprising:
>
> providing a wafer as a central substrate;
>
> depositing or growing at least one amorphous interface passivation layer over the substrate;
>
> depositing at least one conductive and passivating layer on the at least one interface passivation layer, the at least one conductive and passivating layer comprising a dopant;
>
> providing thermal treatment at a temperature of about 500° C. or higher, the thermal treatment crystallizing, at least in part, the at least one conductive and passivating layer and facilitating diffusion of the dopant from the at least one conductive and passivating layer through the at least one interface passivation layer; and
>
> providing metallization as electrodes which directly contact the at least one conductive and passivating layer following the thermal treatment thereof, wherein the dopant diffused through the at least one interface passivation layer provides shortened charge carrier flow paths between the substrate and the electrodes through the at least one conductive and passivating layer and the at least one interface passivation layer.

(Ex. A, ’074 Patent at 19:14–35.)

79. Dependent Claim 2 of the ’074 Patent recites:

> The method of claim **1**, further comprising depositing at least one antireflective layer, and/or a low reflective index layer forming a good internal mirror on a back of the solar cell.

(Ex. A, ’074 Patent at 20:1–4.)

80. Dependent Claim 4 of the ’074 Patent recites:

> The method of claim **1**, wherein the thermal treatment results in perforation of the at least one interface passivation layer to allow carrier transport therethrough.

(Ex. A, ’074 Patent at 20:13–15.)

81. Dependent Claim 8 of the ’074 Patent recites:

> The method of claim **1**, wherein the at least one conductive and passivating layer comprises an amorphous, silicon containing compound, and wherein facilitating diffusion of the dopant further comprises facilitating diffusion of dopant atoms into the substrate to provide a high-low junction or a p-n junction.

(Ex. A, ’074 Patent at 20:30–35.)

82. Trina Solar’s infringing TOPCon products include a solar cell that is made by methods claimed by the ’074 Patent. This is a schematic of Trina Solar’s TOPCon solar cell, taken from a presentation Trina Solar made at the 50th IEEE Photovoltaic Specialists Conference (PVSC) on June 15, 2023. The schematic is annotated to show layers corresponding to those formed according to method of Claim 1.




(Image from Trina Solar’s June 15, 2023 presentation at 50th IEEE PVSC (annotated).)

83. “<u>A method of fabricating a solar cell, comprising; providing a wafer as a central substrate</u>”: In manufacturing the Infringing Products, Trina Solar uses a wafer as a central substrate. In the schematic below, the wafer is the gray-colored layer labeled “n-type Cz Si wafer”, which is a wafer made of a silicon crystal grown by the Czochralski (or “Cz”) method and doped with a n-type dopant.




84. "<u>depositing or growing at least one amorphous interface passivation layer over the substrate</u>": Trina Solar deposits or grows an amorphous interface passivation layer over the wafer substrate. This interface passivation layer in Trina Solar's TOPCon products is a layer of amorphous silicon oxide that "coats" the back surface of the substrate to reduce electron recombination. In the annotated schematic below, this interface passivation layer is the white-colored layer labeled "Tunnel $SiO_x$". "Amorphous" means that the layer does not have a defined crystalline structure of atoms, but instead has silicon atoms that are arranged in a disordered manner, making cells more flexible and able to handle higher temperatures. Trina Solar refers to this interface passivation layer as a "Tunnel $SiO_x$" because it is sufficiently thin to allow electrons to "tunnel" through it.




85. "<u>depositing at least one conductive and passivating layer on the at least one interface passivation layer, the at least one conductive and passivating layer comprising a dopant</u>": Trina Solar deposits a conductive and passivating layer, the red "n+ poly-Si" in the annotated schematic below, on the interface passivation layer (the "Tunnel $SiO_x$"). "Poly-Si" is short for polysilicon and the "n+" means it is (heavily) doped with an N-type dopant. In Trina Solar's TOPCon solar cells, the conductive and passivating layer includes phosphorus, which is an N-type dopant.



86. "providing thermal treatment at a temperature of about 500° C. or higher, the thermal treatment crystallizing, at least in part, the at least one conductive and passivating layer and facilitating diffusion of the dopant from the at least one conductive and passivating layer through the at least one interface passivation layer": Trina Solar applies a thermal treatment of at least a temperature of about 500 °C. The thermal treatment crystallizes, at least in part, the conductive and passivation layer (the "n+ poly-Si" in the diagram above). The thermal treatment facilitates the diffusion of the dopant, phosphorus, from the conductive and passivating layer through the interface passivation layer (the "Tunnel $SiO_x$" in the diagram above).

87. Testing of the Trina Solar TOPCon solar cell shows that, after the heat treatment, the phosphorus dopant has diffused from the conductive and passivating layer (the "n+ poly-Si"), through the interface passivation layer (the "Tunnel $SiO_x$"), and into the central substrate (the "n-type Cz Si wafer"). For a Trina Solar TOPCon cell, the figure below plots, on the y-axis, the amount of phosphorus at two locations (in red) and the amount of oxygen (in green) versus, on the x-axis, the depth or distance from the back surface of the cell. The oxygen (green) represents silicon oxide (see silicon levels in black). The vertical green dashed line represents the boundary between the interface passivation layer and the central substrate.




88. The graph shows a high level of phosphorus to the left of the dashed green line, which represents the back surface of the central substrate. To the far right of the top graph (at a depth of greater than 5500 A), the amount of phosphorus drops to a level that is consistent with the amount of phosphorus found in a standard N-type silicon substrate. In between those two points, the graph shows elevated levels of phosphorus in the conductive and passivating layer that continues into the central substrate. The higher level of phosphorus near the back side of the central silicon substrate compared to deeper into the central substrate shows that phosphorus diffused into the central substrate from the back side (*i.e.*, from the conductive and passivating layer). The degree of diffusion shown by these data necessarily requires a thermal treatment of the silicon cell assembly at a temperature above 500 °C.

89. "providing metallization as electrodes which directly contact the at least one conductive and passivating layer following the thermal treatment thereof, wherein the dopant diffused through the at least one interface passivation layer provides shortened charge carrier flow paths between the substrate and the electrodes through the at least one conductive and passivating

layer and the at least one interface passivation layer": Trina Solar provides metallization as electrodes that directly contact the conductive and passivating layer (the "n+ poly-Si" layer). Metal electrodes are added to the cells such that they directly contact the conductive and passivating layer to form an electrical connection thereto. The diagram below shows that the electrodes (the "Rear Ag contacts") directly contact the red-colored n+ poly-Si layer. As explained below, the antireflective layer (or coating) deposited on the back of the Trina Solar TOPCon cells is silicon nitride ("$SiN_x$:H"). $SiN_x$ is an electrical insulator, so the electrodes of the Trina Solar TOPCon solar cells must make direct contact with the conductive and passivating layer to allow an electric current to pass through that layer. Otherwise, the antireflective layer would restrict the flow of electricity between the electrodes and the conductive and passivating layer.




90. The phosphorus dopant that is diffused from the conductive and passivating layer (the "n+ poly-Si") through the interface passivation layer (the "Tunnel $SiO_x$") provides shortened charge flow paths between the substrate (the "n-type Cz Si wafer") and the electrodes through the conductive and passivating layer (the "n+ poly-Si") and interface passivation layer (the "Tunnel $SiO_x$") in the Trina Solar TOPCon solar cell. This is reflected in the smooth transition of

phosphorus levels shown in the graph above, resulting in higher conductivity near the back surface of the substrate compared to an assembly that does not have dopant diffused through the interface passivation layer. This causes charge flow paths to curve toward the electrodes, shortening them as illustrated in concept in Figure 5 of the ’074 Patent and described above. Thus, Trina Solar practices the method of Claim 1 of the ’074 Patent.

91. Trina Solar also infringes Claim 2 of the ’074 Patent, which recites: “The method of claim 1, further comprising depositing at least one antireflective layer, and/or a low reflective index layer forming a good internal mirror on a back of the solar cell”. The manufacture of Trina Solar’s TOPCon solar cells includes depositing at least one antireflective layer, a silicon nitride antireflective coating (the blue “$SiN_x$:H” layer in the image below), on the back of the solar cell. The antireflective layer is used to increase absorption, and minimize reflection, of light energy that hits the solar cell from the back (because the device is bifacial and accepts light from both the front and back sides of the device). Silicon nitride has a refractive index (a measurement of how much light bends when entering a material) well below 3.0 and therefore forms a good internal mirror on the inside surface of the antireflective layer, such that light that passes through the solar cell from the front is reflected by the antireflective layer back into the cell so as to excite additional electrons. In this way, the antireflective layer is akin to a one-way mirror allowing light from the back side to pass through, while reflecting light from the front side back into the cell. As described by Trina Solar in the below image, the structure of the anti-reflective coating used in the Trina Solar TOPCon products results in “inner back reflectivity increased by 25%”.




("Rocky Li, Trina Solar: Vertex N-iTOPCon Module Series" available at https://youtu.be/9QjAxKG2Ycw?si=HyvCfSTMj-RV19qr.)

92. Trina Solar also infringes Claim 4 of the '074 Patent, which recites: "The method of claim 1, wherein the thermal treatment results in perforation of the at least one interface passivation layer to allow carrier transport therethrough": The amount of phosphorus diffusion into the silicon substrate, as reflected in the graph above, indicates that the Trina Solar TOPCon solar cell exhibits perforation of the interface passivation layer (the "Tunnel $SiO_x$") from the heat treatment, which allows greater amounts of phosphorus to diffuse through that layer. These perforations allow improved carrier transportation (electron and hole movement) through the interface passivation layer when the cell is in use.

93. Trina Solar also infringes Claim 8 of the '074 Patent, which recites: "The method of claim 1, wherein the at least one conductive and passivating layer comprises an amorphous, silicon containing compound, and wherein facilitating diffusion of the dopant further comprises facilitating diffusion of dopant atoms into the substrate to provide a high-low junction or a p-n junction": The manufacture of a Trina Solar TOPCon solar cell includes making a conductive and

passivating layer (the “n+ poly-Si”) that comprises an amorphous silicon containing compound. As shown above, facilitating diffusion of the dopant comprises facilitating diffusion of dopant (phosphorus) atoms into the substrate to provide a high-low junction.

94. In violation of 35 U.S.C. § 271(g), Trina Solar (as detailed above for each Trina Solar entity) infringes, literally and/or under the doctrine of equivalents, the ’074 Patent by importing, and/or causing its subsidiaries and/or affiliates to import, into the United States, Trina Solar TOPCon solar cells (either as standalone cells and/or as components of modules/panels) that are manufactured overseas using a process (as described above) that is claimed by the ’074 Patent; offering to sell, selling and/or using, and/or causing its subsidiaries and/or affiliates to offer to sell, sell and/or use, in the U.S., Trina Solar TOPCon solar cells (either as standalone cells and/or as components of modules/panels) that are manufactured overseas using a process that is claimed by the ’074 Patent; and offering to sell, selling and/or using, and/or causing its subsidiaries and/or affiliates to offer to sell, sell and/or use, within the U.S., including within this judicial district, Trina Solar products that contain Trina Solar TOPCon solar cells that are manufactured overseas using a process that is claimed by the ’074 Patent.

95. In violation of 35 U.S.C. § 271(b), Trina (as detailed above for each Trina entity) has induced, and continues to induce, its subsidiaries, distributors, retailers, suppliers and/or affiliates to directly infringe, both literally and/or under the doctrine of equivalents, the ’074 Patent by inducing said entities to import Trina Solar TOPCon solar cells (either as standalone cells and/or as components of modules/panels) into, and/or offer to sell, sell and/or use such Trina Solar TOPCon solar cells in, the U.S. that are manufactured overseas using a process that is claimed by the ’074 Patent; and/or import into, and/or offer to sell, sell and/or use in, the U.S., including within

this judicial district, Trina Solar products that contain Trina Solar TOPCon solar cells that are manufactured overseas using a process that is claimed by the ’074 Patent.

96. In violation of 35 U.S.C. § 271(b), T1 (as detailed above for each T1 entity) has induced, and continues to induce, its subsidiaries, distributors, retailers, suppliers and/or affiliates to directly infringe, both literally and/or under the doctrine of equivalents, the ’074 Patent by inducing said entities to import Trina Solar TOPCon solar cells (either as standalone cells and/or as components of modules/panels) into, and/or offer to sell, sell and/or use such Trina Solar TOPCon solar cells in, the U.S. that are manufactured overseas using a process that is claimed by the ’074 Patent; and/or import into, and/or offer to sell, sell and/or use in, the U.S., including within this judicial district, Trina Solar products that contain Trina Solar TOPCon solar cells that are manufactured overseas using a process that is claimed by the ’074 Patent.

97. In violation of 35 U.S.C. § 271(b), Trina has induced its customers, and continues to induce its customers, to directly infringe, both literally and/or under the doctrine of equivalents, the ’074 Patent by inducing said customers to use within the United States Trina Solar products containing Trina Solar TOPCon solar cells that are manufactured overseas using a process that is claimed by the ’074 Patent, by taking actions that include, but are not limited to, advertising its products and services and their infringing uses, including on Trina Solar’s website; establishing distribution channels for these products in the United States; drafting, distributing and/or making available product specifications, instructions and/or manuals for the products to Trina Solar’s customers and prospective customers; and/or providing technical support, replacement parts and/or other services for the products to Trina Solar’s customers and prospective customers in the United States.

98. In violation of 35 U.S.C. § 271(b), T1 has induced its customers, and continues to induce its customers, to directly infringe, both literally and/or under the doctrine of equivalents, the ’074 Patent by inducing said customers to use within the United States products containing Trina Solar TOPCon solar cells that are manufactured overseas using a process that is claimed by the ’074 Patent, by taking actions that include, but are not limited to, advertising its products and services and their infringing uses, including on its website; establishing distribution channels for these products in the United States; drafting, distributing and/or making available product specifications, instructions and/or manuals for the products to T1’s customers and prospective customers; and/or providing technical support, replacement parts and/or other services for the products to T1’s customers and prospective customers in the United States.

99. Trina Solar has had actual knowledge of its infringement, and inducement of infringement, of the ’074 Patent since at least September 10, 2024, when First Solar notified Trina Solar of its TOPCon patent portfolio and Trina Solar’s infringement of at least the ’074 Patent. Trina Solar also likely had knowledge of the ’074 Patent on or about July 19, 2024, when First Solar issued a press release announcing its ownership of patents related to the manufacturing of TOPCon solar cells and its investigation into several leading solar manufacturers for potential infringement of these patents.

100. As a result of Trina Solar’s infringement, and inducement of infringement, of the ’074 Patent, First Solar has been damaged and will continue to suffer damages. First Solar is entitled to recover for damages sustained as a result of Trina Solar’s wrongful acts, including lost profits and a reasonable royalty in amounts yet to be determined, and to receive such other and further relief as this Court deems just and proper. First Solar is also entitled to an injunction to prevent Trina Solar from importing into, and/or using, selling and/or offering to sell in, the United

States solar cells that are manufactured using methods claimed by the ’074 Patent and/or products that incorporate such solar cells.

101. Trina Solar’s infringement, and inducement of infringement, of the ’074 Patent has been, and continues to be, deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorneys’ fees to First Solar pursuant to 35 U.S.C. §§ 284–285.

102. Trina and T1 work in concert with respect to the production, marketing, and sales of Trina Solar TOPCon products at T1’s U.S. manufacturing plant, which was acquired from Trina. T1 and Trina have entered into multiple commercial agreements with respect to T1’s U.S. manufacturing plant, including a solar cells supply agreement, polysilicon supply agreement, module operational support agreement, IP license agreement, trademark license agreement, sales agency agreement, offtake agreement, a solar cell operational support agreement and a solar cell wafer sales agreement. Under the module operational support agreement, T1 is responsible for the manufacturing of solar modules at its U.S. plant including those modules incorporating using TOPCon solar cells that are manufactured overseas by Trina using methods claimed by the ’074 Patent. Trina has also appointed T1 as its exclusive sales agent to market and sell in the United States, including Delaware, Trina Solar-branded solar modules produced by T1. Trina is therefore liable jointly, severally, or in the alternative with respect to T1’s infringement of the ’074 Patent as outlined above.

103. First Solar makes the preliminary identification of the infringing Trina Solar TOPCon Products without the benefit of discovery and/or claim construction in this action, and expressly reserves the right to augment, supplement and revise its identifications based on additional information obtained through discovery or otherwise. Further, to the extent T1

manufactures TOPCon solar products other than the Trina Solar TOPCon Products, First Solar expressly reserves the right to augment, supplement and revise its identification of accused products based on additional information obtained through discovery into those products. First Solar anticipates that discovery will further confirm that Trina Solar TOPCon solar cells that are manufactured overseas using methods claimed by the ’074 Patent, and that products which incorporate such TOPCon solar cells are imported into and/or used, offered for sale and/or sold within, the U.S.

## **JURY DEMAND**

104. First Solar demands a trial by jury on all issues triable as such.

## **PRAYER FOR RELIEF**

WHEREFORE, First Solar respectfully requests that this Court enter judgment for it and against Trina and T1 as follows:

A. That Trina and T1 have infringed, and continue to infringe, either literally and/or under the doctrine of equivalents, the ’074 Patent;

B. That Trina and T1 have induced others to infringe, and continue to induce others to infringe, either literally and/or under the doctrine of equivalents, the ’074 Patent;

C. That Trina, T1 and each of their respective officers, agents, employees and those acting in privity with them, be permanently enjoined from further direct and/or indirect infringement of the ’074 Patent;

D. That Trina and T1 pay damages adequate to compensate First Solar for its infringement, and inducement of infringement, together with interest and costs, arising out of Trina and T1’s past infringement, and past inducement of infringement, of the ’074 Patent, Trina and T1’s ongoing infringement, and ongoing

inducement of infringement, of the ’074 Patent and enhanced damages pursuant to 35 U.S.C. § 284;

E. That Trina and T1 be ordered to pay pre-judgment and post-judgment interest on the damages assessed;

F. That Trina and T1’s infringement, and inducement of infringement, is willful and that the damages awarded to First Solar should be enhanced up to three times the actual damages awarded;

G. That First Solar be awarded damages for its costs, disbursements, expert witness fees and attorneys’ fees and costs incurred in prosecuting this action, with interest, including damages for an exceptional case pursuant to 35 U.S.C. § 285 and as otherwise provided by law;

H. An order requiring Trina and T1 to pay an ongoing royalty to First Solar in an amount to be determined for any continued infringement, and continued inducement of infringement, after the date judgment is entered; and

I. An award to First Solar of such further relief at law or in equity as the Court deems just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

Brian P. Egan (#6227)
Megan E. Dellinger (#5739)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
began@morrisnichols.com
mdellinger@morrisnichols.com

*Attorneys for Plaintiff*

OF COUNSEL:

Keith R. Hummel
Sharonmoyee Goswami
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000

March 4, 2026